GEORGIA NORTHERN RAILWAY CO. *v.* TIFTON, THOMASVILLE & GULF RAILWAY CO. and *vice versa.*

In view of the facts disclosed by the record and of the questions involved, there was no error in granting the injunction.

Argued November 6, 7, 1899.—Decided January 31, 1900.

Petition for injunction. Before Judge Spence. Brooks county. August 5, 1899.

The Tifton, Thomasville and Gulf Railway Company, by its petition against the Georgia Northern Railway Company, alleged, in substance: Petitioner is a corporation duly organized and doing business under a charter granted August 9, 1897, by the secretary of State, under the laws of this State, and is proceeding, under this charter, to construct a railroad from Tifton, in Berrien county, to Thomasville, in Thomas county, Georgia, having heretofore selected and laid out a route on which the road is being constructed, as shown by a plat and survey attached to the petition. It has already spent considerable sums of money in the building of the road and the preliminary work incident thereto, and has secured valuable franchises therefor; among the latter, terminal facilities in the city of Thomasville, of the value of about $18,000, voted to petitioner by the citizens of Thomasville should it complete the

railroad from Tifton to Thomasville inside of two years. The Georgia Northern Railway Company, incorporated under the laws of this State, with its principal office and place of business in Brooks county, started in the early part of this year (1899) to build a tramroad from the north side of the town of Moultrie, in Colquitt county, westerly across the Ochlochnee river, to reach some timber there, which it was under contract to haul to Pidcock, in Brooks county, and laid about a mile or less of the tramroad, using on it old, worn-out, bent, and pieced rails of very light weight, unfit for use on a railroad for ordinary business, and barely fit for use to haul logs over. On February 23, 1899, the Georgia Northern Railway Company, for the purpose of placing itself in position to keep others from building a railroad there, and to keep down competition, applied for and obtained from the secretary of State an amendment to its charter, allowing it to build a railroad from Moultrie to Thomasville; and it proceeded for some distance to mark out a line for, and announced its intention to build, such a road from where its said projected tramroad would lead it, down the west side of the Ochlochnee river; Moultrie and Thomasville being on the east side of the stream. It does not and never did intend in good faith to prosecute the work of building, completing, and operating a railroad from Moultrie to Thomasville, and is only making pretense of so building, in order to annoy and delay petitioner, and possibly others, so as to keep out competition in the county of Colquitt, where it now has almost a monopoly and is doing a large business, hauling logs and lumber to and from sawmills. Its projected line would parallel, within ten miles for the entire distance from Moultrie to Thomasville, the line that petitioner has laid out and begun to construct, the distance being only about twenty-eight miles. This would be a violation of the law of the State and of petitioner's rights, since petitioner's charter is older than said amendment to the charter of the Georgia Northern Railway Company; and it would seriously damage petitioner by having the effect of making petitioner wait till the expiration of the two years allowed by law in which the defendant company, should it be allowed to proceed, could hold said line and keep others from building within ten miles of it. The dis-

tances between the principal points are as follows: from Pid-
cock to Thomasville is seventeen miles, from Pidcock to Moul-
trie is thirty-two miles, from Moultrie to Thomasville is twenty-
eight miles, from Pavo (a place on the line of defendant's
road) to Thomasville is about seventeen miles, while from Pavo
to Pidcock is fifteen miles.    The petition prayed that the de-
fendant be enjoined from building its proposed railroad within
ten miles of the petitioner's line of road.

By amendment the petitioner alleged, among other things:
The property of the Georgia Southern and Florida Railroad
Company was sold by commissioners in equity at public out-
cry in 1894, under mortgage foreclosure, and bought by a com-
mittee of the bondholders, who were, as purchasers, incorpo-
rated in 1895, under the general law, as the present Georgia
Southern and Florida Railway Company; and petitioner pro-
cured from the latter all its rights, property, franchises, grades,
surveys, etc., from Tifton to Thomasville (which were obtained
in good faith and under a valid charter and are very valuable),
and, acting through its incorporators, before any valid organiza-
tion of the company was had, sent over the line between Tif-
ton and Thomasville an engineer corps for the purpose of fol-
lowing up the grade and proposed route of the Georgia South-
ern and Florida Railroad Company, which had been laid off
and graded before the year 1897; the engineer in charge of
this work for petitioner's incorporators made an examination of
the entire line and estimate of the cost of building and reported
the result to the incorporators, and this line was adopted and
laid out by the incorporators as the line they intended to build
and upon which subscriptions were asked to the stock of the
company.    This work was done in December, 1898, before the
amendment of the charter of the defendant, authorizing it to
build a branch road such as now desired.    The defendant
answered, denying the material allegations of the petition; and
the court, after hearing evidence, granted an interlocutory in-
junction as prayed.    Defendant excepted.    Plaintiff filed a
cross-bill of exceptions, the grounds of which need not be stated.

*Humphreys & Branch* and *J. W. Walters*, for plaintiff in error.
*N. E. Harris, J. H. Merrill*, and *J. Carroll Payne*, contra.

LITTLE, J.   In this case the evidence as to the fact of location by the plaintiff in error of its line of railroad was conflicting; and even if, in view of all of its charter powers, the right given to construct a line of railroad from Moultrie to Thomasville was such as was contemplated by the statute which sought to protect one line from the encroachments of another, the judge could, in his discretion, in view of such conflict in the evidence, have legally granted the injunction.   Some of the evidence directly negatived the fact that the Georgia Northern Railway Company had selected and marked out a line for its railroad.   If this evidence was true (and the judge had a right to believe it), it was in his discretion to grant the injunction. There is another reason, however, why it appears to us that the injunction was properly granted.   The Georgia Southern & Florida Railroad Company was, by an act of the General Assembly of this State, fully empowered to construct a branch of its railroad from Tifton to Thomasville ; and the fact is not questioned that, in pursuance of such charter power, it located a right of way between these two points and did a considerable amount of work in its preparation to receive the line of railroad.   It is contended, however, that the act of the legislature which incorporated that company contained a stipulation that the corporation should forfeit its rights and franchises unless the line of railroad was completed within a given time; and by reference to the acts of the General Assembly we find these conditions incorporated in the charter.   It further appears that that railroad company did not complete its road within the given time, and that its property and assets were placed in the hands of a receiver, and a sale of all the property of the corporation, including the railroad line, was had under order of the court, and that the purchasers organized a new company and took possession of such property.   Under our statute such purchasers succeeded to the rights and franchises possessed by the original corporation, and, having organized under the general railroad laws of this State, they succeeded to the ownership of the right of way procured and laid off between Tifton and Thomasville.   The defendant in error procured such right of way and the property thereon by purchase from the

Georgia Southern and Florida Railway Company, who were the purchasers of the property and franchises of the Georgia Southern and Florida Railroad Company. And even if it be true that the defendant in error had not acquired this right of way before the plaintiff in error located its line, we can not see how that fact operates to the benefit of the Georgia Northern Railway Company. It can do so only on the theory that the Georgia Southern and Florida Railroad Company had forfeited its franchises and this right of way. It is true that it was a condition of its charter•that it should so forfeit, but a forfeiture for a misuser or nonuser of corporate franchises can be declared only by the judgment of a court of competent jurisdiction, on a proceeding instituted for that purpose, and the forfeiture dates from the time of such declaration. Civil Code, § 1883. Neither can the plaintiff in error avail itself of the claim that such right of way and the franchise to construct a railroad upon it had been forfeited, as it seeks to do in this case; because neither misuser nor nonuser can be set up collaterally as a defense to the action. *City of Atlanta* v. *Gate City Co.*, 71 *Ga.* 106, and authorities there cited. So that, if there had been no legal forfeiture of the franchises given to the Georgia Southern and Florida Railroad Company to construct the road, and if it be true that the purchasers of the property of that corporation acquired the franchises possessed by that company, together with its property, then it will follow that there was a selected and laid out line of railroad between the two points, and that it was so located before the plaintiff in error acquired any rights to its alleged located line. So that, irrespective of when the Tifton, Thomasville and Gulf Railway Company acquired this prospective line, a right of way had already been located, towards which the plaintiff in error must be held to legally observe the restrictions laid down in section 2176 of the Civil Code. In any event, therefore, there was no error in granting the injunction.

*Judgment on main bill of exceptions affirmed. Cross-bill dismissed. All the Justices concurring.*